This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41969**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DAVID BROWN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Fred Van Soelen, District Court Judge**

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Maria A. Pomorski, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Defendant David Brown appeals his conviction for trafficking methamphetamine by possession with intent to distribute, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006). On appeal, Defendant argues that (1) the district court erred in admitting undisclosed photographs at trial; (2) expert testimony regarding the ultimate issue in this case constituted plain error; and (3) there is insufficient evidence that Defendant intended to distribute methamphetamine. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}** On January 25, 2023, three probation officers conducted a visit of Defendant's motel room in Clovis, New Mexico, where Defendant was staying with his girlfriend. The probation officers observed a crystalized substance and syringe in an open black box along with beer cans and a pipe on the nightstand, and contacted the Clovis Police Department. A sergeant then came to the motel to investigate.

**{3}** Upon arriving at the room, the sergeant located a black box, which contained a needle, baggies, loose methamphetamine, and a crystalized rock that later tested positive for methamphetamine on the nightstand. The sergeant also observed a digital scale on the nightstand and "some glass meth pipes and a large bong" on a nearby dresser. Defendant and his girlfriend then agreed to a search of the room. The sergeant searched the girlfriend's purse and found baggies with a substance that tested positive for black tar heroin, blue pills that tested positive for acetaminophen though testing could not rule out fentanyl, and Xanax pills. As a result, Defendant was charged with two counts of trafficking a controlled substance by possession with intent to distribute, contrary to Section 30-31-20, for the heroin and methamphetamine; and two counts of distribution of a controlled substance, contrary to NMSA 1978, Section 30-31-22 (2021), for the Xanax and fentanyl.

**{4}** At trial, the State began to ask one of the probation officers about four photographs she had taken while in the motel room. One of the photographs—the main photograph at issue and admitted as State's Exhibit 2—showed a black box containing methamphetamine, a syringe, and baggies on the nightstand, but inaccurately showed marked baggies of Xanax and fentanyl on the nightstand as well, which had been placed there later by investigators. Defendant immediately asked to approach the bench, asserting that the State had not provided the photographs during discovery in this case. The State asserted that the photographs had been in discovery "for some time" and that the photographs were also mentioned in reports for Defendant's separate probation violation case. Defendant again asserted that he was not provided the photographs—to include Exhibit 2, which inaccurately shows the Xanax and fentanyl baggies on the nightstand—in discovery, nor were Defendant's probation reports provided in this case.

**{5}** The district court heard argument outside the presence of the jury about the admissibility of the photographs. Defendant argued that admission would be prejudicial because counsel was not able to advise Defendant on all of the evidence the State had against him and Defendant believed that the other drugs photographed on the nightstand had been moved from their original locations before the photographs were taken, such that defense counsel would have used the photographs in pretrial interviews and to impeach the State's witnesses. The district court then questioned the parties about production of the photographs during discovery. The State conceded that it could not definitively state whether the photographs were produced during discovery; however, the State again asserted that black and white copies of the photographs were provided in Defendant's separate probation violation case.

**{6}** To address the potential discovery violation, the district court made color copies of the photographs and allowed Defendant to question the probation officer about them. After questioning the probation officer outside the presence of the jury, Defendant renewed his objection to admission of the photographs. The State admitted that the photographs were disclosed late. The district court found that while the photographs were not timely disclosed, the "only prejudice [counsel was] asserting is that you just didn't have them beforehand to properly advise your client" and any prejudice to Defendant was insufficient to warrant their exclusion.

**{7}** The probation officer's testimony regarding the photographs then resumed, and she testified that three of the photographs, including Exhibit 2—were taken when she first arrived to the room, showing the scene as it was before anything was moved during the investigation, and the fourth photograph was taken after the sergeant collected and placed items in the box for transport to the police department. The district court admitted the photographs, including Exhibit 2, over Defendant's objections.

**{8}** The sergeant testified next and agreed that the first three photographs, including Exhibit 2, depicted the nightstand as it was when he arrived at Defendant's room, with the methamphetamine, baggie of Xanax pills, baggie of fentanyl pills, a blowtorch, and a crushed can with methamphetamine residue visible. He also explained that the fourth photograph depicted the nightstand after he had searched the room and "collected everything." On cross-examination, Defendant attempted to impeach the sergeant's earlier direct testimony with his police report, which stated that the baggies containing fentanyl and Xanax were found in the girlfriend's purse. The sergeant claimed that his testimony on direct examination, that these items were found on the nightstand, was correct and that any misrepresentation was in his police report.[1]

**{9}** Additionally, the sergeant was qualified as an expert in narcotics investigations and narcotics trafficking, and testified that the crystalized rock tested positive for methamphetamine and that the amount of methamphetamine found in Defendant's motel room, "approximately ten grams," was not that of a typical user. The sergeant testified that he has seen this amount in other trafficking cases and that based on his training and experience, "there was narcotics trafficking happening in that room," because of "the amount of methamphetamine located along with the scale and the baggies located." He then reiterated his opinion that, "I believe that there was indeed narcotics trafficking happening from that hotel room" based on the scale, labelled and prepackaged baggies, and amount of methamphetamine found.

**{10}** The State then had a forensic chemistry expert testify as to testing of the drugs found. At the close of the State's case, Defendant moved for directed verdicts on all charges. The district court granted the motion with respect to Defendant's heroin charge because the evidence showed the heroin was found in the girlfriend's purse, but denied

---

1In regard to the baggie of heroin, the sergeant's testimony was consistent that it was found in the girlfriend's purse.

the motion with respect to the other charges finding there was evidence for the jury to determine whether those drugs were found on the nightstand or in the girlfriend's purse.

**{11}** Defendant then recalled the sergeant as their only witness. The sergeant continued to insist that the photographs depicted Defendant's motel room as it was when he arrived, with the box, methamphetamine, Xanax, and fentanyl all on the nightstand, again asserting that his police report and preliminary examination testimony were inaccurate. After the sergeant's testimony, the district court reconsidered Defendant's motion for directed verdict. Defendant argued that there was contradictory evidence as to where the remaining drugs were found and that had the photographs been disclosed before trial, Defendant would have been able to show that the photographs were taken after the investigation began. At this point, the district court admitted it was reconsidering its previous ruling on the disclosure violation, as it was unclear whether allowing Defendant to question the officer was enough to overcome the prejudice to Defendant because it was controverted when the photographs were taken.

**{12}** As a remedy, the district court offered to consider either allowing Defendant to recall and question the probation officer further or declaring a mistrial and asked the parties to consider how they wanted to move forward. Defendant declined to request a mistrial and instead argued to "reopen the case" to use a screenshot of the sergeant's body camera footage from that day to impeach witnesses; the State deferred to the district court on how to handle its late disclosure. The judge agreed to reopen the case for the Defendant to recall one witness.

**{13}** Defendant then recalled the sergeant for a second time. The sergeant again testified that he saw the Xanax, fentanyl, and baggies were on the nightstand when he entered the room. Defendant showed the sergeant a screenshot of his body camera footage, which depicted the nightstand as it was when the sergeant entered the room. The screenshot showed the box on the nightstand with the crystalized rock inside of it, but no fentanyl, Xanax, or baggies were visible. The screenshot conclusively established that the probation officer and sergeant had both given inaccurate testimony about what was found on the nightstand when law enforcement arrived. Given this indisputable evidence, the sergeant admitted that except for the methamphetamine, all other drugs were found in the girlfriend's purse as stated in his police report. Based on this impeachment, the district court granted Defendant's renewed motion for directed verdict with respect to his charges for Xanax and fentanyl.

**{14}** The jury convicted Defendant on the sole remaining charge of trafficking methamphetamine by possession with intent to distribute. After trial, Defendant filed a motion for judgment notwithstanding the verdict arguing that there was "insufficient evidence to support the jury['s] verdict on the element of intent to transfer" and that the State violated *Brady* principles by not disclosing the officer's photographs before trial. *See Brady v. Maryland*, 373 U.S. 83 (1963).

**{15}** The district court reviewed the alleged *Brady* violation as a motion for a new trial separate from the motion for judgment notwithstanding the verdict, explaining that this

was a discovery issue rather than a *Brady* violation because the photographs were disclosed in this case during trial. The court noted that Defendant did not request a mistrial when given the option to do so but instead used the photographs to effectively impeach the sergeant. The district court ultimately denied the motion for a new trial, finding that Defendant was afforded time to question witnesses about the photographs, which provided Defendant impeachment material. The district court also reasoned that other evidence presented was sufficient for the jury to find Defendant guilty on the trafficking of methamphetamine charge.

**{16}** Defendant now appeals.

**DISCUSSION**

**{17}** On appeal, Defendant argues that (1) the district court erred in admitting the undisclosed photographs into evidence; (2) the sergeant's expert testimony about the ultimate issue of trafficking constituted plain error; and (3) the State failed to present sufficient evidence that Defendant intended to distribute methamphetamine. We consider Defendant's arguments in turn.

## I.     Admission of Undisclosed Photographs

**{18}** First, Defendant contends that the district court erred by admitting the previously undisclosed photographs at trial. Specifically, Defendant asserts that the late disclosure of the probation officer's photographs violated Defendant's right to due process and the State's discovery obligations. The State asserts that reversal is not warranted in this case because the "record shows that the late disclosure was, at most, inadvertent," and Defendant had knowledge of their existence since copies of the photographs were attached to Defendant's probation violation report.[2] We conclude that the district court's admission of the photographs does not constitute reversible error.

**{19}** The suppression of favorable evidence violates a defendant's due process rights. *See State v. Huerta-Castro*, 2017-NMCA-026, ¶ 33, 390 P.3d 185, *abrogated on other grounds by Ramirez v. Marsh*, 2025-NMSC-050, ¶ 34 n.6, 580 P.3d 768. New Mexico equates disclosure violations "to a charge of prosecutorial misconduct, which appellate courts review for an abuse of discretion." *Huerta-Castro*, 2017-NMCA-026, ¶ 32. "In order to find an abuse of discretion, we must conclude that the decision below was against logic and not justified by reason." *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701. Although *Brady* is applicable only when it is revealed after trial that the state failed to disclose material and exculpatory evidence to the accused, we use a similar analysis when evidence is disclosed for the first time during trial and evaluate "whether the late tender has impeded the effective use of evidence in such a way that impacts the fundamental fairness of the proceedings." *Huerta-Castro*, 2017-

---

2We remind the State that, "the best way to avoid reversal for failure to disclose evidence to [a] defendant before trial is for the state to review methodically and diligently the information available to it and to disclose all exculpatory information to [the] defendant, giving [the] defendant the benefit of the doubt on arguable matters." *State v. Altgilbers*, 1989-NMCA-106, ¶ 34, 109 N.M. 453, 786 P.2d 680.

NMCA-026, ¶ 36. To determine whether a late disclosure is reversible error we consider, "(1) whether the [s]tate breached some duty or intentionally deprived the defendant of [the] evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence." *State v. Mora*, 1997-NMSC-060, ¶ 43, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds by State v. Frazier*, 2007-NMSC-032, ¶ 31, 142 N.M. 120, 164 P.3d 1. "[A] defendant bears the burden of proving [they were] prejudiced by non-disclosure of evidence." *State v. Ortega*, 2014-NMSC-017, ¶ 43, 327 P.3d 1076.

**{20}** Assuming that the first three *Mora* factors are met, the issue here is whether the district court cured the State's failure to timely disclose the photographs. *See Mora*, 1997-NMSC-060, ¶ 44 (explaining that "resolution of this issue hinges on whether the trial court cured the failure to timely disclose the evidence" when assuming the first three factors were met).

**{21}** "In determining prejudice to a defendant where the state initially deprives [the] defendant of the evidence but later produces the evidence, the reviewing court should consider whether the failure to timely disclose the evidence was cured by the trial court." *Id.* (internal quotation marks and citation omitted). A district court's curative action "concerns the form of remedy, or sanction imposed by the district court in response to the untimely disclosure." *State v. Ruiz*, 2007-NMCA-014, ¶ 54, 141 N.M. 53, 150 P.3d 1003. Defendant argues the district court's remedies did not cure the State's failure to timely disclose the photographs. We disagree.

**{22}** Instead of requesting a mistrial when given the opportunity to do so by the district court, Defendant opted to reopen the case to recall and impeach the sergeant with screenshots from his body camera. The impeachment revealed that two of the State's witnesses, the sergeant and the probation officer, had provided false testimony at trial as it became apparent that the photographs were taken after evidence had been moved by investigating officers rather than showing the nightstand as it was when law enforcement arrived, as the witnesses had initially testified. In fact, the sergeant ultimately admitted that, except for the methamphetamine, all of the other drugs had been located in the girlfriend's purse and not on the nightstand. This impeachment testimony was in accord with what the sergeant had stated in his police report, pretrial interview, and sworn testimony before trial. As a result, the district court granted Defendant's renewed motion for directed verdict with respect to the fentanyl and Xanax charges. Additionally, although the district court did not grant Defendant's motion with respect to the methamphetamine possession with intent to distribute charge, as we explain below, there was other evidence to support submission of this charge to the jury.

**{23}** In *Mora*, the district court also gave defense counsel the opportunity to reexamine any witness that had testified before the evidence at issue was disclosed, but counsel chose not to do so. 1997-NMSC-060, ¶ 46. The defendant argued that their conviction should be reversed because of the state's late disclosure, *see id.* ¶ 43, but

our Supreme Court held that the "[d]efendant waived [their] claim that the late disclosure of the tapes prevented [them] from effectively cross-examining witnesses, because defense counsel failed to recall any witness when given the opportunity to do so." *Id.* ¶ 46. Similarly in *State v. Hall*, the district court explained that it would consider a recess to allow a defendant the opportunity to make use of evidence that was not timely disclosed, but the defendant did not seek a recess. 1987-NMCA-145, ¶ 7, 107 N.M. 17, 751 P.2d 701. This Court viewed the defendant's inaction "as a cure of any prejudice that may have resulted from the untimely production," *and* explained that the "defendant's inaction [w]as a waiver of any claim that the [district] court abused its discretion in not granting a continuance." *Id.* In this case, Defendant expressly denied the district court's offered cure of declaring a mistrial and elected to reexamine and impeach the sergeant. Thus, the district court's remedy of allowing Defendant to recall and impeach the sergeant's testimony and subsequent dismissal of the Xanax and fentanyl trafficking charges sufficiently cured the State's error in failing to properly disclose the photograph, *and* in doing so, Defendant waived any claim that the district court's cure for the late-admitted photographs was prejudicial. *See Mora*, 1997-NMSC-060, ¶ 46. Therefore, we conclude that even if the State violated a duty to disclose the photographs, the photographs were material, and late disclosure was prejudicial to Defendant, Defendant waived any claim that the district court's decision to admit the photographs and allow Defendant to impeach the sergeant was reversible error. *See id.* ¶ 46; *Hall*, 1987-NMCA-145, ¶ 7. Accordingly, the admission of the photographs at trial does not constitute reversible error in this case.

## II.     Ultimate Issue Testimony

{24}     Defendant next argues that the district court erred in permitting the sergeant to opine that Defendant was guilty of trafficking methamphetamine, reaching the ultimate issue in this case. However, Defendant concedes that because this issue was not objected to at trial or preserved for appeal, this Court may review only for plain error. The State agrees that plain error is the correct standard of review, and asserts that there was no plain error because Defendant has not shown that the form of the sergeant's expert opinion in answer to two questions created grave doubts about the validity of the verdict. Assuming that the sergeant's statements were in error, we conclude that the testimony was not in plain error.

{25}     "Unpreserved evidentiary errors are reviewable on appeal under a plain error standard." *State v. Paglinawan*, 2026-NMCA-044, ¶ 11, 586 P.3d 346 (internal quotation marks and citation omitted); Rule 11-103(E) NMRA (allowing this Court to review evidentiary questions that are not preserved under a plain error standard). When determining whether there has been plain error, this Court "must examine the alleged errors in the context of the testimony as a whole." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted). To find plain error, this Court must be convinced "that admission of the [evidence] constituted an injustice that created grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted); *see State v. Chavez*, 2024-NMSC-023, ¶ 10, 562 P.3d 521 ("We will not

reverse on the basis of plain error unless the error affected a substantial right of the defendant." (alteration, internal quotation marks, and citation omitted)). The focus of our review is on the error's effect on the overall fairness and integrity of the proceedings, and on the public perception of the proceeding's fairness, rather than on whether the defendant's guilt is so doubtful it would shock the conscience to allow it to stand. *See Chavez*, 2024-NMSC-023, ¶ 11. Because "[p]lain error is an exception to the general rule that parties must raise timely objection to improprieties at trial, . . . it is to be used sparingly." *Dylan J.*, 2009-NMCA-027, ¶ 15 (internal quotation marks and citation omitted). To warrant reversal, the issue raised must amount to an error that is plain and that affects the substantial rights of the defendant. *See id.* That is, the Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict. *See id.*

**{26}** Expert witnesses cannot testify directly to a defendant's intent or "state their opinion of the defendant's guilt," but they can testify about trafficking versus personal use quantities of drugs. *State v. Rael-Gallegos*, 2013-NMCA-092, ¶¶ 29-30, 308 P.3d 1016; *see* Rule 11-702 NMRA (allowing expert witnesses to "testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"). Similarly, an officer's testimony may embrace the ultimate issue by educating the jury in regard to what factors, in their experience, warranted a trafficking charge. *See Rael-Gallegos*, 2013-NMCA-092, ¶ 33; *see also* Rule 11-704 NMRA (stating that "[a]n opinion is not objectionable just because it embraces an ultimate issue"). In *Rael-Gallegos*, this Court acknowledged that it can be difficult to determine when an expert crosses the line constituting error when testifying about whether a person possessing drugs intends the drugs to be for personal use or to traffic those drugs based on the amount and other evidence found. *Id.* ¶ 35. This Court concluded that the expert's testimony was permissible in that case because the expert was not asked, nor did they offer, their opinion as to whether the defendant was trafficking and did not offer an opinion that the defendant had intent to distribute. *Id.* ¶¶ 32-33. The expert instead permissibly testified about the factors that warrant a trafficking charge based on their experience. *Id.* ¶ 33. Thus, while close to the ultimate issue line, the testimony provided information regarding the indicia of drug trafficking and to assist the jury in understanding intent. *Id.* ¶ 37.

**{27}** While the investigating sergeant was qualified as a testifying expert in narcotics investigations and narcotics trafficking, Defendant argues that the sergeant's expert testimony crossed the line from guiding the jury regarding indica of narcotics trafficking generally, to offering his opinion regarding Defendant's guilt because the sergeant testified twice that drugs were being trafficked from Defendant's motel room. In the first instance, the sergeant was asked, "With everything you found, different items, amounts, what does your training and investigations, your experience tell you was going on here?" The sergeant answered, "there was narcotics trafficking happening in that room" based on "the amount of methamphetamine located along with the scale and the baggies located." Later in his testimony, the sergeant was again asked his expert opinion based on his investigations over the years and answered, "With everything that

was collected, with the baggies, with the amount of narcotics located, I believe that there was indeed narcotics trafficking happening from that hotel room." The State admits that the form of the sergeant's first statement was improper, but argues it does not constitute plain error.

**{28}** Although the sergeant's challenged testimony alone appears to be opinion testimony of Defendant's guilt regarding trafficking methamphetamine, we must view his statements in the context of his testimony as a whole to determine whether they amounted to plain error. *See State v. Dylan J.*, 2009-NMCA-027, ¶ 15. Although Defendant has argued that the sergeant's answers to two questions asked by the State were impermissible statements about Defendant's guilt of drug trafficking, Defendant's brief fails to provide any information about the context of these two questions and answers and makes no argument about why the answers affected the overall fairness of the trial. As the State notes in its answer brief, Defendant simply asserts, without providing a developed argument, that this expert testimony "was likely to have impacted the jury's verdict." In his reply brief, Defendant briefly argues that the sergeant's testimony was unfairly prejudicial and made in plain error because it impacted Defendant's substantial rights by infringing on a determination belonging to the jury—whether Defendant was guilty of possession with intent to traffic methamphetamine. Evidence is unfairly prejudicial when "the prejudicial effect of expert testimony substantially outweighs its probative value." *State v. Yepez*, 2021-NMSC-010, ¶ 19, 483 P.3d 576; *accord* Rule 11-403 NMRA. Although the sergeant's testimony did describe the amount of methamphetamine in the room negatively and as consistent with trafficking, any prejudice did not substantially outweigh its probative value because the testimony provided the jury with details about what was found in Defendant's room and helped the jury contextualize the amount found. *See Paglinawan*, 2026-NMCA-044, ¶ 24 (concluding that expert testimony was not overly prejudicial when it "provided context for the investigation, information about the drugs found, and details about how these drugs are typically used and sold"). Additionally, the sergeant's testimony did not detract from the jury's ability to independently draw conclusions based on the other evidence presented at trial, including the presence of baggies and a scale found in the motel room. *See Rael-Gallegos*, 2013-NMCA-092, ¶ 34. The district court instructed the jurors that they are the sole judges of the facts in this case and alone judge witness credibility and give weight to witness testimony. *See* UJI 14-118 NMRA (jury instruction explaining that the jury should give expert opinions and reasoning the weight they think they deserve and "may reject an opinion entirely"). Thus, even if the sergeant's testimony was in error, we cannot say it affected the fairness of the trial or substantive rights of Defendant. *See State v. Gwynne*, 2018-NMCA-033, ¶ 38, 417 P.3d 1157 (explaining that even if errors in expert testimony occurred, they were not plain error if they did not affect the fairness of the trial or substantial rights of the defendant). Therefore, we conclude that no plain error resulted from the sergeant's expert testimony.

### III.    Sufficiency of the Evidence

**{29}** Defendant last argues that the evidence presented at trial was insufficient to support the conclusion that he intended to transfer methamphetamine to another person. The State argues that the jury was presented with sufficient evidence that Defendant intended to transfer or distribute methamphetamine. We conclude that there was sufficient evidence to support Defendant's conviction.

**{30}** Sufficient evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. When assessing the sufficiency of the evidence, this Court "determine[s] whether any rational jury could have found the essential facts to establish each element of the crime beyond a reasonable doubt." *State v. Consaul*, 2014-NMSC-030, ¶ 42, 332 P.3d 850 (internal quotation marks and citation omitted). In doing so, this Court views the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We do not reweigh evidence or substitute our judgment for that of the fact-finder. *Id.* ¶ 30.

**{31}** In order to prove trafficking of methamphetamine by possession with intent to distribute, the jury instructions required the State to prove that "Defendant intended to transfer [methamphetamine] to another." This intent can be inferred from the surrounding facts and circumstances such as the quantity of drugs, the presence of paraphernalia associated with distribution, or expert testimony regarding the inconsistency of the quantity with personal use. *See State v. Hubbard*, 1992-NMCA-014, ¶ 15, 113 N.M. 538, 828 P.2d 971.

**{32}** Here, the State presented testimony and a forensic laboratory report that the crystalized rock found in Defendant's motel room tested positive for methamphetamine and weighed 8.74 grams. The sergeant, a qualified expert in narcotics investigations and narcotics trafficking, explained that the quantity of methamphetamine found in Defendant's motel room was more indicative of trafficking than personal use because a user typically possesses between 1.7 grams and 3.5 grams, while a heavy user typically possesses between 3.5 grams and 5 grams. He then testified that Defendant was charged with trafficking based on the quantity of methamphetamine found in the motel room, as well as the scale and baggies present.

**{33}** In *Hubbard*, this Court reasoned that expert testimony concerning the items and quantity of drugs found at a defendant's residence was sufficient to support a conviction for trafficking by possession with intent to distribute. *See* 1992-NMCA-014, ¶¶ 10-14. Similarly, here a reasonable juror could infer that Defendant intended to distribute based on the quantity of the methamphetamine, the scale, and the baggies found in the motel room. Although Defendant argues that this evidence could also be consistent with personal use, "[o]ur role is only to determine whether substantial evidence exists to support the conviction and not whether evidence exists to support an opposite result." *Id.* ¶ 12.

**{34}** Therefore, we conclude that there was sufficient evidence presented for the jury to find that Defendant intended to transfer methamphetamine to another and to convict Defendant for trafficking of methamphetamine by possession with intent to distribute.

**CONCLUSION**

**{35}** For the foregoing reasons, we affirm.

**{36}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**JANE B. YOHALEM, Judge**